ANSORGE, Appellant, vs. CITY OF GREEN BAY, Respondent.

*February 6—March 5, 1929.*

For the appellant there was a brief by *Martin & Martin,* attorneys, and *G. F. Clifford,* of counsel, all of Green Bay, and oral argument by *Mr. Clifford.*

*Thos. C. Dwyer* of Green Bay, for the respondent.

DOERFLER, J. The plaintiff had been employed as a teacher in the vocational school during the year preceding her contract, and it is conceded herein that she at all times performed her services in an acceptable and efficient manner. When, however, she presented herself for re-employment for the new school year of 1925, it was well understood by her that her re-employment under the written contract would be conditioned in accordance with the unwritten policy adopted and pursued by the board, which was aimed at the non-employment of married women as teachers, ex-

cepting only where unmarried women were unavailable. When the contract, therefore, was submitted to the plaintiff for her signature, it contained the provision as to marriage above set forth, and she signed it with full knowledge of the policy of the board, and of the ostensible effect that a breach of such marriage provision would entail. A concession was made by the board for the benefit of the plaintiff, pursuant to which, if she concluded to marry during the Christmas vacation, it became incumbent upon her to give thirty days' notice to the board, evidently to afford the board ample opportunity to engage a successor.

Although the director had knowledge of plaintiff's proposed marriage and apparently consented thereto, no action in that regard had been taken by the board, and it requires no argument to establish that the director had no authority to waive a provision of the contract, but that such waiver could follow only from action taken by the board in its official capacity. Nor is it necessary to dwell upon the illegality of the attempted ratification by the board of the director's act in attempting to discharge the plaintiff pursuant to the proceedings had at the special meeting in January, held on Sunday. Such Sunday meeting of the board had no greater effect than though no meeting whatever had been held. Plaintiff therefore not having been legally discharged until the 18th day of February, 1926, was entitled to her unpaid salary up to that date, as found by the trial court, and her discharge dated from that date and not from the date of the notification by the director in January. Besides, it must be noted that the defendant has not appealed from the judgment as entered.

Plaintiff's counsel, among other things, urge that the plaintiff is entitled to her entire unpaid salary for the full school year because she received no official notice from the board with respect to her discharge. It conclusively appears from the evidence, however, that she accepted the notice received from the director in January, and considered herself

discharged as of that date. Furthermore, she ceased to perform services from that time on, and refrained from offering to perform her services thereafter. Under the circumstances, the giving of an additional notice by the board would constitute a mere idle ceremony.

Counsel for the plaintiff further argue that the marriage provision in the contract was a mere covenant and not a condition. Whether it was a covenant or a condition must be determined from the language used in the contract, from the policy adopted by the board, and from all the surrounding facts and circumstances existing at the time the contract was entered into. Not only was the policy of the board fully established, but such policy was expressly incorporated in the very contract itself, and constituted an essential element of that document. The plaintiff had full knowledge of the board's policy, both before she entered into the contract and when the contract was signed. She was also thoroughly familiar with the purpose of the board in hiring unmarried women as teachers in the vocational school. The rule is clearly laid down in 24 Ruling Case Law, p. 612, where it is said:

"Teachers and other administrative officers of the public school system are normally subject to selection, dismissal, and control at the hands of the district school directors, who may make and enforce any reasonable rules and regulations in this connection, and, in the absence of statutes to the contrary, may designate certain prerequisite qualifications of teachers, as for instance that only men shall be eligible for certain positions."

See, also, *Comm. ex rel. Scott v. Board of Education,* 187 Pa. St. 70, 40 Atl. 806, 41 L. R. A. 498; *People ex rel. Fursman v. Chicago,* 278 Ill. 318, 116 N. E. 158, L. R. A. 1917 E, 1069 and note.

In 24 Ruling Case Law, p. 614, it is said:

"Rules and regulations adopted by a board prior to the making of a contract of employment with a teacher, which

are known or ought to be known to the teacher when he enters into the contract, form part of the contract, and the teacher's employment is subject thereto."

In 24 Ruling Case Law, p. 618, it is said:

"The right to hire teachers and other school officials presupposes the right to dismiss them, and both of these powers are generally in the local school boards." See, also, *Marion v. Board of Education,* 97 Cal. 606, 34 Pac. 643, 20 L. R. A. 197; *Freeman v. Bourne,* 170 Mass. 289, 49 N. E. 435, 39 L. R. A. 510.

In 35 Cyc. p. 1076, it is said:

"A board or officer authorized to select and appoint or confirm the appointment of teachers has a discretionary power in passing upon the fitness of an applicant for the position of teacher in a particular school or grade, and in determining such fitness they may consider the sex of the applicant; and unless there is manifest abuse, the exercise of this discretionary power will not be reviewed by the courts."

In the selection of teachers a board like the one herein of necessity must be and ordinarily is clothed with a broad power of discretion. It may be conceded that a married teacher can ordinarily perform her duties as satisfactorily as an unmarried one, but the board is charged with a duty which requires it to promote the public interests. On a policy such as is manifested in the instant case there may be a wide difference of opinion. Many circumstances may exist with reference to a particular school which might lead to the belief that a male teacher would be more suitable for employment than a female teacher. On the other hand, the same may be said with respect to married and unmarried teachers. In the employment of teachers the board must be and ordinarily is vested, as is heretofore said, with a wide discretion, and when such discretion is exercised in good faith and is not contrary to law, the exercise of such discretion should not be interfered with or controlled by the courts.

The action of the board does not contravene the provisions of sec. 6.015 of the Statutes, which section recognizes

the freedom of women to contract the same as men. Such section, as far as it is pertinent to the instant case, refers only to the right of a woman to enter into a contract, and does not restrict the board in the employment of either men or women, in accordance with its views.

*By the Court.*—The judgment of the lower court is affirmed.