RAY E. EDIE v. SCHOOL DISTRICT NO. 1 FOR UNORGAN-
IZED TERRITORY OF KOOCHICHING COUNTY.[1]

June 12, 1931.

No. 28,507.

[1]Reported in 237 N. W. 177.

Harvey H. Palmer, for appellant.
Jevne & Blomholm, for respondent.

WILSON, C. J.

Plaintiff's motion for a new trial was denied, and he appealed from a judgment of dismissal.

Plaintiff is a school teacher, and he was employed by defendant for a term of nine months commencing September 7, 1926. He claims his discharge on December 18, 1926, was wrongful. Defendant claims it was for cause. Plaintiff seeks to recover $840 as salary for the remainder of the term. Defendant district is an unorganized territory, and the county superintendent of schools, the county treasurer, and the chairman of the county board are ex-officio the members of the school board.

G. S. 1923, §§ 2900-2927, as amended, 1 Mason, 1927, id. provides for the examination of and defines qualified teachers; it also provides for complaints and permits the county superintendent to suspend a teacher's authority, after hearing. An appeal may be taken to the state superintendent, whose action is final. The statutory causes for revocation are these [§ 2927]:

"(a) Immoral character or conduct unbecoming a teacher.

"(b) Failure, without justifiable excuse, to teach for the term of his contract, without first securing the written release of the school board.

"(c) Inefficiency in teaching or in the management of a school.

"(d) Affliction with active tuberculosis or some communicable disease shall be considered as cause for the suspension of certificate, while the holder thereof is suffering from such disability."

Plaintiff asserts that the foregoing procedure is exclusive, and hence a school board is without authority to discharge a teacher even for cause. We cannot agree with the suggestion. The statutory provisions in many cases will be adequate and efficient, but they are directed at the teacher's authority to make contracts as a teacher. The certificate evidences the holder's qualification for employment as a teacher. It does not necessarily mean that he is or will be a successful teacher; nor does it guarantee that one who can will. These statutory provisions are necessary and useful. The causes of revocation above mentioned as well as the procedure indicated have their origin in L. 1911, p. 114, c. 96, which relates to the revocation and suspension of teachers' certificates. The act does not assume to interfere with contractual rights or obligations, and discloses no intention by implication or otherwise to repeal G. S. 1923 (1 Mason, 1927) § 2815(5) which provides that a school board may discharge teachers for cause. Such is the rule. Christensen v. Plummer, 130 Minn. 440, 153 N. W. 862; Curkeet v. Joint School Dist. No. 2, 159 Wis. 149, 149 N. W. 708; State ex rel. Early v. Wunderlich, 144 Minn. 368, 175 N. W. 677. It should be so.

■ Defendant's evidence tended to show that: Plaintiff was unable to maintain discipline or enforce school regulations; some of his pupils have gone on strike and refused to attend his classes or recite; he had permitted dancing in the school building under circumstances which were in violation of the rules; he had, in company with students, attended a party until a late hour at a lumber camp under circumstances which he himself termed indiscreet.

We are of the opinion that the evidence in the case is sufficient to support a finding that the board had good cause to discharge the plaintiff. We are also of the opinion that the court erroneously received in evidence, over plaintiff's objection, exhibit 2. It is a letter from the superintendent of the school wherein plaintiff was teaching to the county superintendent of schools, who was a member of the school board; and it makes a direct attack upon plaintiff's lack of success.

If the contents of the letter were to be established, Mr. Smith, the writer, should have been called as a witness. He was not. This letter was hearsay. Perhaps there is sufficient evidence in the case without this exhibit, yet without it defendant's case would not be strong. There is no way by which we can tell the extent of the influence upon the trier of fact from reading this communication. Considering its origin, it would naturally have considerable force. It embraces almost every phase and angle of the issue involved. As a rule it is not safe to go upon the theory that such incompetent and hearsay evidence may be disregarded. We have no way of knowing the result of its insidious effect.

The judgment is reversed and a new trial is granted.

Reversed.

