MAE A. BACKIE v. CROMWELL CONSOLIDATED SCHOOL DISTRICT NO. 13.[1]

April 15, 1932.

No. 28,770.

[1]Reported in 242 N. W. 389.

*O. J. Larson*, for appellant.

*Kueffner & Marks*, for respondent.

WILSON, C. J.

Defendant appealed from a judgment entered against it.

Plaintiff is a resident and citizen of Minnesota and a legally qualified school teacher. On May 15, 1930, she entered into a teacher's contract with defendant for a period of nine months commencing on September 1, 1930, with the salary of $120 per month. The contract contains this language:

"And the said teacher shall be under the supervision of the superintendent of schools and subject to the rules and regulations of the Board of Education, including further amendments, and to any change, assignment, grade or position which may be found necessary."

Rule No. 13 of the "rules and regulations" is as follows:

"Female teachers that are single when hired and married thereafter, their contract shall be in force only at the discretion of the board after marriage."

Plaintiff had no knowledge or notice of rule No. 13 until long after the execution and delivery of the contract of her employment. At the time of making the contract she was a single woman, but soon thereafter she married. Defendant, claiming to exercise the power granted by rule No. 13, refused to permit plaintiff to teach, as she has at all times been willing to do. She prosecutes this action to recover for the first month's salary, and was given judgment therefor upon the theory that the marriage did not in any manner disqualify her to perform the contract.

■ The school board in such a school district is empowered to contract with qualified teachers. G. S. 1923 (1 Mason, 1927) § 2815(5). The duty of employing such teachers rests with the board. It may also discharge teachers for cause. G. S. 1923 (1 Mason, 1927) § 2815(5) ; 24 R. C. L. 618.

Plaintiff suggests that G. S. 1923 (1 Mason, 1927) § 2927, specifies the causes for discharge and thereby excludes all others. But this section provides the causes for revocation of the teacher's certificate, not the grounds for discharging a teacher. Edie v. School Dist. No. 1, 183 Minn. 522, 237 N. W. 177.

■ We are not here concerned with the grounds or causes for which a teacher holding the usual valid teacher's contract may be discharged. We are here concerned with construing a contract as made so as to understand the language and the meaning and effect thereof.

The board may make rules governing the selection and removal of employes. Oikari v. School Dist. No. 40, 170 Minn. 301, 212 N. W. 598; 24 R. C. L. 612; 2 Minn. L. Rev. 472. Such board is necessarily clothed with broad discretionary power in formulating and maintaining proper rules and regulations. They have the effect of law within the school administration. Such board provides its own policies at will, and as long as its rules, regulations, and policies are reasonable the court cannot interfere. Short v. Poole Corp. (1926) Ch. Div. p. 66, 42 T. L. R. 107; Fennell v. East Ham Corp. (1926) Ch. Div. p. 641; 2 Dillon, Mun. Corp. (5 ed.) § 574.

As long as the board employs qualified teachers, it is the sole judge as to whom it will employ. It cannot be required to give

reasons why it will employ this person or why it will not employ that person. It is free to contract with any teacher, and in the absence of a statutory restriction the contract may contain any reasonable provision.

It is the duty of the board to promote the public interest. Whether every teacher who marries should be required to step aside for the unmarried may be a debatable question. It may be that ordinarily she can perform her duties as satisfactorily as an unmarried one. There may be special cases where it is unfortunate, in different ways, for the married teacher to cease teaching. On the other hand, many claim that marital duties interfere with that degree of regularity and devotion that is required of teachers. It is claimed that the retention of married women who have husbands presumably able to support them is unfair to unmarried teachers, and particularly to those who are without employment. The state expends large sums of money to maintain our teachers' colleges, and if their graduates are unemployed it will tend to destroy incentive for proper training. The opposition to the employment of married teachers is not aimed to discourage marriage, but rather to act upon the theory that it is in the public interest to dispense with the services of that class of teachers who assume new duties which tend toward the disparagement of school interest.

In the instant case the board did not attempt to establish an inflexible rule, but put the matter of the continuance of the employment after marriage in the discretion of the board. Rule No. 13 is not contrary to any statute. Granting that there may be a wide difference of opinion as to the wisdom of the policy involved, the fact remains that the board has the duty and authority to establish a suitable policy; and it is apparent that in the instant case it exercised its discretion in good faith. We cannot say as a matter of law that rule No. 13 is unreasonable. It follows that it is valid. Ansorge v. City of Green Bay, 198 Wis. 320, 224 N. W. 119; Short v. Poole Corp. (1926) Ch. Div. p. 66, 42 T. L. R. 107; Fennell v. East Ham Corp. (1926) Ch. Div. p. 641; 56 C. J. 405, § 342; Dees v. Board of Education, 146 Mich. 64, 109 N. W. 39; Commonwealth v.

Board of Public Education, 187 Pa. 70, 40 A. 806, 41 L. R. A. 498; People v. Maxwell, 87 App. Div. 131, 83 N. Y. S. 1098; Olney School Dist. v. Christy, 81 Ill. App. 304; School Dist. No. 94 v. Gautier, 13 Okl. 194, 73 P. 954; Ewin v. Independent School Dist. 10 Idaho, 102, 77 P. 222.

The test of the validity of rules and regulations of the board is their reasonableness. The rule which excludes married pupils has been held unreasonable. McLeod v. State, 154 Miss. 468, 122 So. 737, 63 A. L. R. 1161. It has been said that marriage in and of itself does not constitute ground for dismissal of a teacher. 16 Va. L. Rev. 82; Richards v. District School Board, 78 Or. 621, 153 P. 482, L. R. A. 1916C, 789, Ann. Cas. 1917D, 266; Jameson v. Board of Education, 74 W. Va. 389, 81 S. E. 1126, are cited. These cases, like School Dist. No. 3 v. Hale, 15 Colo. 367, 25 P. 308, hardly support the statement, since the statute involved in these cases provided the exclusive method of releasing a teacher after she was on the permanent list. Nor do these cases control in a case such as this, wherein the right to discharge rests on reasonable rules made a part of the contract of employment. It may be also pointed out that in People v. Maxwell, 39 Misc. 166, 79 N. Y. S. 174, 87 App. Div. 131, 83 N. Y. S. 1098, it was rather assumed that a by-law authorizing the dismissal of a teacher for marriage was reasonable, but the decision was reversed on appeal, 177 N. Y. 494, 69 N. E. 1092, because the by-law was in conflict with the New York statute which specified the sole reasons authorizing a discharge. Of course where a statute expressly provides the sole grounds and methods for a discharge, it must be substantially followed. Barthel v. Board of Education, 153 Cal. 376, 95 P. 892; Hull v. Independent School Dist. 82 Iowa, 686, 46 N. W. 1053, 48 N. W. 82, 10 L. R. A. 273; 56 C. J. 405, § 342. But in Minnesota we have no such statute. Under some statutes which are not all inclusive the board may include additional grounds for discharge. School Dist. No. 94 v. Gautier, 13 Okl. 194, 73 P. 954.

■ But even though the rule be valid, plaintiff attempts to say that she did not know about it and hence it was not within the

terms of the contract. We think her position is unsound. Her contract was made with reference to and "subject to the rules and regulations of the board." Thereby the rules and regulations, which include rule No. 13, became a part of her contract. Larkin v. Glens Falls Ins. Co. 80 Minn. 527, 83 N. W. 409, 81 A. S. R. 286; Burkhead v. Independent School Dist. 107 Iowa, 29, 77 N. W. 491; Gillan v. Board of Regents, 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336; Bishop, Contracts (2 ed.) § 439.

In Wisconsin there was a statute providing that a school board may "remove at pleasure any principal," etc. and it was held that this statute was a condition of the teacher's contract as much as if written in it. Gillan v. Board of Regents, 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336. Whether this plaintiff knew of this particular rule is now immaterial. She had an opportunity of learning about the rules before making her contract. She does not claim fraud or mistake. She cannot under such circumstances avoid the contract by showing that she did not know what it contained. 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1735, and cases cited.

In 24 R. C. L. § 71, p. 614, the rule is stated:

"Rules and regulations adopted by a board prior to the making of a contract of employment with a teacher, which are known or ought to be known to the teacher when he enters into the contract, form part of the contract, and the teacher's employment is subject thereto."

It will not do for plaintiff to say she did not know of rule No. 13. All persons who work in obedience to rules are bound to take notice of them. As we construe the contract, plaintiff agreed to teach school conditioned that she would remain unmarried during the school term, or rather that she would so teach, giving the employer the right in its discretion to terminate the contract in the event of her marrying. Such a contract is valid, and the board was within its right in releasing her. Guilford School Township v. Roberts, 28 Ind. App. 355, 62 N. E. 711; School Directors v. Ewington, 26 Ill. App. 379; Olney School Dist. v. Christy, 81 Ill. App. 304; Ansorge

v. City of Green Bay, 198 Wis. 320, 224 N. W. 119; 56 C. J. 404, § 340.

Plaintiff's rights are controlled by the terms of her contract. The mere fact that she might be just as able to teach after as well as before marriage is not controlling. The board had a right to create the policy in the interests of the public welfare; and, the contract being made in obedience to the policy, plaintiff is bound by the terms thereof. The board could legally discharge her by virtue of the power reserved by the terms of the contract.

Reversed.

DIBELL, J. (dissenting).

I dissent. The term "rules and regulations" is found twice in the contract. The first paragraph refers to the grades in which the teacher shall teach, her participation in the supervision of the play-grounds and halls, her coöperation in extra class activities of the schools, her submission of an inventory of equipment and supplies at the close of her service, her salary, her undertaking to teach the grades to which she is assigned to the best of her ability, to keep a register of attendance, to make such report as is required by law or the superintendent or principal of the school or the county superintendent or by the state department of education, "and to observe and enforce all rules and regulations established by proper authority for the government and management of said school."

The second paragraph refers to duties of both school board and teacher relative to the care of the school and premises.

The third paragraph provides that the teacher shall be under the supervision of the superintendent of schools and subject to the "rules and regulations" of the board of education, including further amendments, and to any change, assignment, grade, or position which may be found necessary.

It seems to me that the term "rules and regulations" in the connection used refers to the general subject of teaching and conduct of the school, and not to a rule which the board has chosen to make the nature of which is not more specifically stated and of which she does not have knowledge but which avoids her contract at the

option of the board upon her marriage. I think there is no question of the validity of a provision in a contract. Such a provision was in the contract involved in Ansorge v. City of Green Bay, 198 Wis. 320, 224 N. W. 119, cited in the opinion. Whether a school board will employ a married woman as teacher is a question of policy; and what we have here is a construction of a contract.

HOLT and LORING, JJ. (dissenting).
We concur with Mr. Justice Dibell.