## GERTRUDE ANDERSON v. CONSOLIDATED SCHOOL DISTRICT NO. 144, HENNEPIN COUNTY.[1]

January 24, 1936.

No. 30,611.

*Cobb, Hoke, Benson, Krause & Faegre* and *Donald L. Robertson,* for appellant.

*D. F. Nordstrom, Boutelle, Bowen & Flanagan,* and *Leonard W. Simonet,* for respondent.

STONE, JUSTICE.

Action for breach of contract of hire. After verdict for plaintiff, defendant appeals from the order denying its alternative motion for judgment notwithstanding or a new trial.

Plaintiff is a primary school teacher. Under the contract in question she was employed by defendant for the term from September 4,

[1]Reported in 264 N. W. 784.

1933, to June 1, 1934. Her personal and professional qualifications are conceded to be of the best. The one trouble is that she has been the unfortunate victim of three fainting spells, epileptiform in nature. The first occurred June 3, 1933; the second October 2; and the latest January 11, 1934. The two latter occurred in the schoolhouse and the one in January, 1934, in the schoolroom. The attacks are severe. During the third plaintiff became unconscious; she fell to the floor; her body was rigid; her eyes were open and staring; and mucus in quantity issued from her mouth. Her pupils, averaging seven or eight years old, were badly frightened and for the time being demoralized. Some ran screaming from the room.

Defendant's board conducted an investigation which was impartial and sympathetic. Competent medical authority advised that while there was nothing in plaintiff's condition to make it injurious to her personally to continue teaching, there was no assurance that the attacks would not recur. In consequence and after a meeting at which plaintiff appeared, she was discharged March 23, 1934. That action she claims to have been a breach of contract by defendant. The jury agreed with her.

■ Defendant's board has the statutory power to "discharge" teachers "for cause." 1 Mason Minn. St. 1927, § 2815 (5). Notwithstanding, this case went to the jury upon a charge permitting them to find for plaintiff unless defendant's board "acted in a reasonable and proper manner in the determination" of the question before them. In substance, they were told that if, in their judgment, the school board did not act "as reasonable and intelligent men in the discharge of their duty and upon evidence which was before them, sufficient in character to establish, not to your decision but to the decision of reasonable and competent men, the unfitness in the manner specified of the plaintiff," they should return a verdict for plaintiff.

That is not the law. The management of our schools is an important function. It is vested in our boards of education to the exclusion even of juries and judges. Nowhere does it touch public welfare more intimately or at a more sensitive point than in respect to the primary grades, where the pupils are at the most impression-

able period of their school experience. There, if anywhere, the responsibility of the supervising board is to be concentrated rather than diluted, as it would be by subjection to an unrestricted reviewing power in juries and courts. In such matters the board acts not only in its executive character but also as a quasi-judicial tribunal. But its function in the latter respect is not to be isolated and considered apart from its responsibility as the school manager.

The board, rather than any court or jury, is the tribunal which in the first instance must determine the question of "cause." Its decision is not to be set aside unless it has acted in bad faith, or arbitrarily and capriciously, upon the facts before it or properly within its knowledge. That is the rule required by the statutory delegation of power to the board.

No decision of our own involving the precise question has been cited. (See Backie v. Cromwell Consolidated Sch. Dist. No. 13, 186 Minn. 38, 242 N. W. 389, for a general discussion of the powers of a school board.) In Michigan the rule is that the "finding and determination of the board are conclusive unless the board acted corruptly, in bad faith, or in clear abuse of its powers." Finch v. Fractional Sch. Dist. No. 1, 225 Mich. 674, 676, 196 N. W. 532. There a charge of "gross immorality" was sustained by the board upon evidence "that plaintiff had frequently taken the name of God in vain and had used, habitually, profane language in the presence and hearing of his pupils." A judgment for the plaintiff was reversed with the comment that a verdict should have been directed the other way. In Kentucky the rule is that the findings of the school board are [258 Ky. 845] "conclusive on the courts" unless the board has abused its discretion. Meade County Bd. of Ed. v. Powell, 254 Ky. 352, 71 S. W. (2d) 638, followed in Thompson v. Pendleton County Bd. of Ed. 258 Ky. 843, 81 S. W. (2d) 863. In Kansas the action of the board stands, "in the absence of fraud, corruption, oppression, or bad faith * * *. The court and the jury could have no concern with anything except the question of bad faith." Morris v. Sch. Dist. No. 40, 139 Kan. 268, 269, 30 P. (2d) 1094, 1095.

In Oklahoma the rule is to the contrary. School Dist. No. 94 v. Gautier, 13 Okl. 194, 73 P. 954; Urie v. Bd. of Ed. 86 Okl. 265, 208 P. 210; School Dist. No. 62 v. Morgan, 127 Okl. 193, 260 P. 46. Notwithstanding the supposedly independent nature of the executive function, it is there held generally and seemingly without limitation that the question of whether there is any ground for the action of a school board in discharging a teacher is always a jury question. By so much, we respectfully suggest, there is permitted a judicial intrusion upon an executive function, and the judiciary is permitted, through the medium of a jury, to review and reverse executive action, whereas the only proper function of the courts in respect thereto is to inquire whether the executive has authority in law for the action. If there is such authority and there is any basis for the action taken, the executive determination of the problem should not be nullified judicially, for to do so would make the judicial decision paramount over that of the executive in a matter which, by express law, has been made an executive function. Against no one more than themselves should judges be meticulous in observance of the boundaries of their assigned constitutional function.

There is no evidence in this case of bad faith, arbitrary or capricious action in the treatment accorded plaintiff by defendant's officers. She was highly esteemed by them, and they were considerate of her. But their first duty was to the children in her charge during school hours. If the parents of some of these same infants had dispensed with the services of a trusted domestic or nurse maid who suddenly became subject to epileptiform attacks, it would be presumptuous and ill-founded criticism to ascribe the action to unreasonable fear or absurd caution. All normal parents would approve, and no mind at once reasonable and impartial could find anything arbitrary or capricious about the case.

■ Erroneously the jury was charged that the burden was upon defendant to prove that the action of its board was justified. Obviously such a charge is wrong unless school district officers do not have the benefit of the presumption of rectitude attending official

action. They have such benefit. Hence, when their decision terminating the employment of a teacher is challenged in litigation, the burden of proof is upon the challenger.

The order appealed from is reversed with directions to enter judgment for defendant.